IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

FILED
SEP 17 2018
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

| | |
|---|---|
| RYAN GUSTAFSON <br><br> Petitioner <br><br> vs. <br><br> UNITED STATES MARSHALS SERVICE <br><br> Respondent | CASE NO.: 4:18 CV 2136 <br><br> JUDGE PEARSON <br><br> PETITION FOR WRIT OF MANDAMUS PURSUANT TO 28 U.S.C. SECTION 1361 <br><br> MAG. JUDGE BURKE |

**COMES NOW** the petitioner, Ryan Gustafson, Pro-Se, who hereby petitions this Honorable Court for a Writ of Mandamus pursuant to 28 U.S.C. § 1361, compelling the United States Marshal Service to uphold and cease violations of the defendants Constitutional rights under the First and Sixth Amendment of the Constitution of the Untied States. In support thereof, the defendant avers the following:

### I. BACKGROUND AND CONTEXT

1. On June 21, 2016 the Petitioner was indicated in a criminal matter at Case No. 16-133, in the United States District Court for the Western District of Pennsylvania. The indictment charged Count 1, committing Counterfeit Acts Outside the United States that would violate 18 U.S.C. § 473 in violation of 18 U.S.C. §§ 470 and 2, and; Count 2, committing Counterfeit Acts Outside the United States that would violate 18 U.S.C. § 473 and § 474 in violation of 18 U.S.C. §§ 470 and 2.

2. The above charges arise from alleged conduct in the Country of Uganda, East Africa, where the defendant, an American Citizen temporarily resided.

3. The defendant is currently awaiting a disposition on the above matter and is detained at the NorthEast Ohio Correctional Center in Youngstown, Ohio (NEOCC).

1

4. The Petitioners attorney of record in the above criminal matter is Patrick M. Livingston and his attorney of record for charges arising from the same conduct in Uganda is; Wandera Ismail.

5. On approximately June of 2018, the petitioners Ugandan counsel became actively involved in his United States Criminal matter, and was thus retained by the District court having processed approval through the 3rd Circuit for such purposes as additional counsel in foreign jurisdiction.

6. Due to urgency in the petitioners case, on approximately July 20, 2018 the petitioner sought to communicate to Attorney Ismail, and per procedure issued various requests to the appropriate responsible parties at the NEOCC seeking the addition of Attorney Ismail's number to his "call list,"[1] and that such be made confidential under Attorney-client privilege. The petitioner provided Attorney Ismail's credentials. See Exhibit A.

7. The petitioner was informed *inter alia* that: "it's not possible to make international calls," and by August 9, 2018, through communication to one counselor Bond, was informed that "someone higher up will need to be contacted about it." Other staff members were informed of the urgency of the requested Attorney communications and in one instance went as far as to say "your constitutional rights don't mean shit."

8. A grievance was submitted[2] and a response was rendered on August 16, 2018 which indicated that the number was "added" to the "attorney" phone list. The response was unavailing and an appeal promptly followed.

9. The appeal was received by administration on August 17, 2018 and Warden Christopher La Rose responded on August 31, 2018. In his response he stated:

> In order to address your complaint, I have reviewed the grievance response provided by U/M Palmer, I have spoken with Case manager Sabo, and I have communicated with GTL [Global Tel*Link]. There is no

---

1  The term "call list" is used in this facility specifically for "legal" calls so that the calls can be entered into the facilities phone system as "private" to facilitate Attorney-client privileged communications.
2  Grievance No. 18-255

> indication that Unit Team has not assisted you appropriately with this matter. That attorney phone umber that you had submitted for the Global List has been added and tested successfully. GTL has confirmed that international calling is active and running properly. You have been provided with telephone access and a means to contact your attorney internationally.

See Exhibit B.

10. Despite the response, any attempt to contact Attorney Ismail fails because in fact, none of the inmate telephone systems were tested and they recite a "fail" indicator message upon making the outgoing call. In other cases, the call simply fails to make a connection to the recipient phone. In other words, the response was a blatant lie and the simplest of tests would reveal the petitioner *still* has no access to Attorney Wandera.

11. Further complains to administration were also unavailing and the petitioner has exhausted all internal remedies, including an attempt to notify CoreCivic.[3] No response was rendered to the petitioner. Additionally, as a final resort the petitioner submitted a request to an "internal" marshal Auditor one; Mrs. Gardner. This request also fell upon deaf ears. To date the petitioner is unable to communicate to counsel.

12. NEOCC is a facility owned and operated by CoreCivic, formerly CCA, a corporation which headquarters in Nashville Tennessee. The NEOCC currently houses approximately 500 Federal pre-trial detainees, 2,000 Ohio State Prisoners and 800 Immigration and Customs Enforcement detainees.

13. All Federal pre-trial detainees are housed at the NEOCC under contract with the United States Marshal Service, as such, the US Marshals are primarily and independently responsible for the incarceration, housing and well being of pre-trial Federal detainees, including the protection of their Constitutional Rights.

14. On Approximately early 2017, the NEOCC changed inmate phone providers from Securus Technologies to Global Tel*Link (GTL). It appears the the petitioner that GTL utilizes "cost saving"

---

3 USPS Cert. Mail No. 7017-1450-0000-2036-1737 See also Exhibit C.

features called VOIP,[4] which have the added side effect of faulty connections and disrupted service and may not provide in some cases such as this, access to entire countries or continents due to poor service.

15.     Although GTL is primarily responsible for the *integrity* of it's services provided, and the Warden of NEOCC and CoreCivic itself is responsible for its choice of phone providers, ultimately, when a decision infringes upon a Constitutional Right, the United States Marshal Service is the responsible party to ensure such infringement ceases and the violation is, at the very least, corrected.

## II. MANDAMUS RELIEF IS WARRANTED UNDER THESE CIRCUMSTANCES

a.     **Jurisdiction for issuance of Mandamus relief**

16.     **28 U.S.C. § 1361. - - Action to compel an officer of the United States to perform his duty:**

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

17.     The issuance of a writ of mandamus is an extraordinary remedy that may only be granted in the exercise of sound discretion. Miller v. French, 530 U.S. 327, 339, 120 S. Ct. 2246, 147 L. Ed. 2D 326 (2000). To obtain mandamus relief, a petitioner must satisfy three elements: (1) petitioner must have a clear and certain claim; (2) respondent must have a non-discretionary, ministerial duty, which is so plain as to be free from doubt; and (3) there must be no other adequate remedy available. Johnson v. Reilly, 349 F.3d 1149, 1154 (9th Cir. 2003).

18.     Here in this action, the petitioner has alleged a clear constitutional violation, the respondent has a plain and clear duty to protect him from constitutional violations of this nature and

---

4   Voice Over Internet Protocol, allows for voice communication by utilizing the internet instead of traditional phone lines.

there is absolutely no other remedy available to the petitioner, as they have all been exhausted.

19. In mandamus actions under 28 USCS § 1361, usually separate questions of jurisdiction and failure to state claim merge; there can be no mandamus jurisdiction if no duty exists on part of defendants, while if duty does exist, not only is there jurisdiction under § 1361 but also plaintiff has adequately stated claim in asking that such duty be fulfilled. <u>Davis Associates, Inc. v Secretary, Dep't of Housing & Urban Development</u> (1974, CA1 NH) 498 F.2d 385.

20. Provisions of 28 USCS § 1361 granting jurisdiction to issue writs of mandamus are flexible and can also encompass declaratory relief if this remedy is deemed proper; there is no inconsistency in asking for mandamus in conjunction with declaratory relief. <u>White v Matthews</u> (1976, DC SD) 420 F Supp 882.

21. Mandamus Act (28 USCS § 1361) encompasses constitutional obligations as well as statutory duties; complexity and novelty of issues on merits does not necessarily deprive federal courts of mandamus jurisdiction. <u>Mattern v Weinberger</u> (1975, CA3 Pa) 519 F.2d 150, vacated on other grounds (1976) 425 US 987, 48 L Ed 2d 812, 96 S Ct 2196.

22. 28 USCS § 1361 provides jurisdiction to enforce constitutional duty; all that is required to invoke jurisdiction is that constitutional claim presented not be insubstantial. <u>Wiren v Eide</u> (1976, CA9 Wash) 542 F.2d 757.

23. Mandamus jurisdiction exists under 28 USCS § 1361 where exercise of discretion violates constitutionally protected rights. <u>CCCO-Western Region v Fellows</u> (1972, ND Cal) 359 F Supp 644.

24. Provisions of 28 USCS § 1361 can only be relied upon when purpose of action is to compel administrative official to do non-discretionary administrative act; phrase "in the nature of a mandamus" grants District Courts broader power to issue writ than under restricted power attendant to common law mandamus and, under such interpretation where plaintiff alleges that defendant has acted unconstitutionally and outside of ambit of his statutory authority, plaintiff's action is within purview of 28 USCS § 1361. <u>Vargas v Chardon</u> (1975, DC Puerto Rico) 405 F Supp 1348.

b. **Applicability and authority for issuance of Mandamus relief**

25. Here, the petitioner contends that the United States Marshals have denied him meaningful access to his Attorney by permitting the NEOCC to impede telephone communications to his Attorney Entirely, causing an unreasonable interference with his right to access to counsel, thus, his First and Sixth Amendment rights have been effectively violated.

26. Additionally, the petitioner avers that other forms of contact with Attorney Wandera are not viable options because Kampala Uganda where Counsel Wandera resides is located approximately 7,300 miles and eight time zones away from Ohio. Mail correspondence can only be accomplished via a lengthy, approximately month long process of customs, inspections and delays, mail tampering, theft and loss, as it makes it's way to a third world country where mail is often lost or stolen and withheld for excessive unknown and inconsistent periods of time with no way to actually track the incoming package and there are no delivery address systems in Uganda, additionally, attorney-client confidentiality may be compromised in the process. Therefore, mail communications do not meet a reasonable standard of communication under the First Amendment under these circumstances.

27. Nevertheless, the petitioner is not required to meet this threshold showing that other forms of communication may be possible, in order to demonstrate a Sixth Amendment right to counsel violation. Under a Sixth Amendment standard, the petitioners rights have been impeded when there is an unreasonable interference with the accused person's ability to consult counsel. Murphy v. Walker, 51 F.3d 714, 718 (7th Cir. 1995) (allegation that plaintiff pretrial detainee's telephone privileges were revoked is sufficient to state claim for violation of Sixth Amendment).

28. Prisoners have a First Amendment right to telephone access, subject to reasonable security limitations. Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986) Citing Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996). However, rights to access to counsel are afforded heightened protections, and Courts have found serious violations when institutions deny a pre-trial detainee access to an attorney or violate confidential privileged communications to counsel.

29. Plaintiff's concerns as to privacy in attorney-client communications implicates the Sixth Amendment right to effect assistance of counsel, i.e., one cannot appropriately prepare for a criminal proceeding if discussions are constrained by fear of eavesdroppers. "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "**[U]nreasonable interference with the accused person's ability to consult counsel is itself an impairment of the right** [to the assistance of counsel]." Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir. 2001)(Emphasis added).

An accused person deprived of counsel during the pretrial phase of criminal proceedings is one of the most serious deprivations that can be suffered by a pretrial detainee. **Policies that restrict a pretrial detainee's ability to consult with his attorney prior to trial, therefore, directly implicate the detainee's Sixth Amendment right to counsel.**

30. In challenging regulations which adversely affect the Sixth Amendment right to counsel by impeding attorney visitation, a pretrial detainee is not required to demonstrate actual injury. Id. "[I]n the context of the right to counsel, unreasonable interference with the accused person's ability to consult counsel is itself an impairment of the right." Id. at 185. See also Maine v. Moulton, 474 U.S. 159, 170, 106 S. Ct. 477, 88 L. Ed. 2d 481 (1985) Holding that "**to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself.**" (Emphasis added). Under Johnson-El v. Schoemehl, 878 F.2d 1043, 1051 (8th Cir.1989), the Court held that "when pretrial detainee's interest in effective communication with attorney is inadequately respected during pretrial confinement, the ultimate fairness of eventual trial can be compromised."

31. Under Wolfish v. Levi, 573 F.2d 118, 133 (2d Cir.1978) The Court found that "[O]ne of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense." When an institutional restriction is found to infringe on a specific constitutional guarantee, "the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security[,]" to determine whether the restriction violates the Constitution. Bell v. Wolfish, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2D 447 (1979).

32. In evaluating whether, as a pretrial detainee, Plaintiff's right to counsel was impaired, a

7

court must determine whether the restrictions imposed unjustifiably obstructed the right of access to counsel or to the courts "in the light of the central objective of prison administration, safeguarding institutional security." Id. Citing Carr v. Tousley, 2006 U.S. Dist. LEXIS 46231 (D. Idaho, May 15, 2006)

33. Absent justification, restrictions which impose severe constraints on a pretrial detainee's ability to contact his attorney and discuss matters of substance violate the Sixth Amendment. See, e.g., Benjamin v. Fraser, 264 F.3d 175, 187-88 (2d Cir. 2001) (unjustified delays imposed on attorneys visiting pretrial detainees violate the Sixth Amendment); Murphy v. Walker, 51 F.3d 714, 718 (7th Cir. 1995) (allegation that plaintiff pretrial detainee's telephone privileges were revoked is sufficient to state claim for violation of Sixth Amendment); Tucker v. Randall, 948 F.2d 388, 390-91 (7th Cir. 1991) (not permitting a pretrial detainee access to a telephone for a four-day period implicates the Sixth Amendment); Johnson-El v. Schoemehl, 878 F.2d 1043, 1052 (8th Cir. 1989) (limiting pretrial detainees to one free phone call per week violates the Sixth Amendment). Here, Defendants' policies made it impossible for Plaintiff to contact his attorney while he was detained for a period of twenty days. Consequently, absent justification in light of the objective of maintaining institutional security, Defendants' policies violate the Sixth Amendment. See *Bell*, 441 U.S. at 547. Citing Lynch v. Leis, LEXIS 27604 (6th Cir. 2002)

34. In this case the petitioner alleges that *all* access to Attorney Wandera is blocked, that the Respondent and administration is aware of this and completely unwilling to resolve the issue, and that this obstruction has been ongoing for over 40 days and is significantly effecting the criminal defendants ability to conduct his defense in his ongoing criminal matter in the District trial court.

**WHEREFORE**; in light of the above and foregoing and in the manifest Interests of Justice, the petitioner requests this Honorable Court to issue an ORDER directing the United States Marshal

8

Services to make telephone communications to Attorney Wandera available to him at the NEOCC, thereby ceasing the aforementioned constitutional violations.

Date: September 10, 2018

Respectfully submitted,

/s/ *[signature]*

By: Ryan Gustafson
USMS No. 36650068
2240 Hubbard Rd.
Youngstown, OH 44505